## UNITED STATES DISTRICT COURT
### District of Maine

| | |
|---|---|
| RONALD HANSON,<br><br>        Plaintiff<br><br>vs.<br><br>PHYSICIAN HEALTH PARTNERS, LLC;<br>CORRECTIONAL HEALTH PARTNERS, LLC;<br>JEFF ARCHAMBEAU INDIVIDUALLY AND AS CEO /<br>PRESIDENT OF CORRECTIONAL HEALTH PARTNERS,<br>LLC.;<br>JENNIFER MIX, INDIVIDUALLY AND AS CHIEF MEDICAL<br>OFFICER OF CORRECTIONAL HEALTH PARTNERS, LLC;<br>DEE BUTLER, INDIVIDUALLY AND AS VICE PRESIDENT<br>OF CLINICAL SERVICES FOR CORRECTIONAL HEALTH<br>PARTNERS, LLC;<br>TERESA MAYER, INDIVIDUALLY AND AS PSYCHIATRIC<br>MD FOR CORRECTIONAL HEALTH PARTNERS, LLC;<br>TIM CANHAM INDIVIDUALLY AND IN HIS OFFICIAL<br>CAPACITY AS AN EMPLOYEE OF CORRECTIONAL<br>HEALTH PARTNERS, LLC; AND<br>KIMBERLY VIGUE, INDIVIDUALLY AND IN HER OFFICIAL<br>CAPACITY AS AN EMPLOYEE OF CORRECTIONAL<br>HEALTH PARTNERS, LLC;<br><br>        Defendants | **COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

NOW COMES Plaintiff Ronald Hanson, by and through his attorney, Jackie T.
DiGiacomo, Esq., and hereby brings this action under 42 U.S.C.§1983, 4th, 8th, 14th Amendments
of the United States Constitution; 42 U.S.C. § 1985; Article 1, §6-A of the Maine State
Constitution; Maine Revised Statutes Title 34-A, § 3049; Maine Human Rights Act, Ch. 337B,
§§ 4681-4685;   Title II of the Americans with Disabilities Act (42 U.S.C. §12132 et. sec.;
Common Law Negligence, Assault and Battery, Negligent Supervision and Intentional Infliction
of Emotional Distress to redress his civil and legal rights, and alleges as follows:

### PRELIMINARY STATEMENT

1

1. While being housed at the Kennebec County Correctional Facility as an inmate, Ronald Hanson (hereinafter referred to as "Hanson") at the time of all alleged violations is an adult male with a mental disability.  On approximately October 2, 2015, Hanson was brutally and physically assaulted by a nurse employed by Physician Health Partners, LLC's and its wholly owned subsidiary company, Correctional Health Partners, LLC (hereinafter referred to as "PHP/CHP") by way of forced, unauthorized medical procedure which left Hanson on the brink of death.  The assault and battery by PHP/CHP employee Defendant Vigue, who was under the supervision and control of Defendants Archambeau, Mix, Butler, Mayer, and Canham at the time, violated Hanson's Federal and State constitutional rights, Civil Rights and resulted in substantial physical injury, pain and suffering, severe mental & emotional and psychological harms.  Although these Defendants are private medical care providers, they are under contract with a county governmental entity to provide medical care services to inmates and thus, are state actors.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States.  In this Complaint, there arise claims concerning questions of Federal laws, specifically, the Fourth Amendment, Eighth Amendment and the Fourteenth Amendment to the United States Constitution;  and 42 U.S. Code §1983; 42 U.S.C.§ 1985; and

   b. 28 U.S.C. §1367, which gives district courts supplemental jurisdiction over state law claims against all parties that are so related to claims in this action within the original jurisdiction of the court that they form part of the same case or controversy.  In this Complaint, the State law claims are violations of the Maine Constitution, Maine Civil Rights Act; Maine Human Rights Act, Title II of the

Americans with Disabilities Act, and Common Law Torts of Negligence, Assault & Battery, Negligent Supervision and Intentional Infliction of Emotional Distress; and

c.   This action seeks to vindicate rights guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution, and Article I Section 6-A of the Maine Constitution. It is brought pursuant to the Federal Civil Rights Act, 42 U.S.C. §1983.

3.   This Court has supplemental jurisdiction over the state civil rights action pursuant to 28 U.S.C. § 1367 because the state action stems from the same common nucleus of operative facts as the federal civil rights claim.

4.   Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) & (2) because:

a.   Defendants are subject to personal jurisdiction in this judicial district and each of the Defendants resides, is found, has an agent, or transacts their affairs in this District;

b.   Physician Health Partners, LLC is the parent company to wholly owned subsidiary Correctional Health Partners, LLC and transacts substantial affairs in this District;

c.   Correctional Health Partners transacts substantial affairs in this District;

d.   Kimberly Vigue is subject to personal jurisdiction in this judicial district and resides, is found, has an agent, or transacts her affairs in this district;

e.   Jeff Archambeau, Jennifer Mix, Dee Butler, Teresa Mayer, and Timothy Canham are subject to personal jurisdiction in this judicial district and each of the Defendants resides, is found, has an agent, or transacts their affairs in this District; and

f.  The events that give rise to this Complaint occurred in this district.

## JURY TRIAL DEMAND

5.  Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## PARTIES

6.  Plaintiff Ronald Hanson ("Hanson") is a resident of Maine. At all times relevant to this complaint, Hanson was housed at the Kennebec County Correctional Facility in the State of Maine, in the custody of the Kennebec County Sheriff's Office and the Kennebec County Sheriff's Office, Corrections Division, as an inmate.

7.  Defendant Physician Health Partners, LLC (hereinafter referred to as "PHP" ) is a for profit company organized under the laws of the State of Colorado and has a principal business address of 1125 17th Street, Suite 1010, City of Denver, State of Colorado 80202.  Defendant Physician Health Partners, LLC is the parent company of Defendant Correctional Health Partners, LLC. Defendant PHP employed Defendant Vigue during times relevant to this Complaint.  PHP is found, has an agent, or transacts affairs in Kennebec County.

8.  Defendant Correctional Health Partners, LLC (hereinafter referred to as "CHP") is a for profit company organized under the laws of the State of Colorado and has a principal place of business located at 1125 17th Street Suite 1000, City of Denver, State of Colorado 80202.  Defendant CHP employed Defendant Vigue during times relevant to this Complaint.  CHP is found, has an agent, or transacts affairs in Kennebec County.

9.  Defendant Jeff Archambeau is the Chief Executive Officer and President of Correctional Health Partners.  Defendant Archambeau, at all times relevant to this Complaint, was employed by Correctional Health Partners which has a principal place of business located at 1125 17th Street Suite 1000, City of Denver, State of Colorado 80202; and which

4

holds a contract with Kennebec County for the provision of medical services to inmates housed at the Kennebec County Correctional Facility.  At all times relevant to this Complaint, Defendant Archambeau provided supervision for PHP/CHP employees who provided health services rendered to Kennebec County at the Kennebec County Correctional Facility.  Defendant Archambeau resides, is found, has an agent, or transacts his affairs in Kennebec County.

10. Defendant Jennifer Mix is the Chief Medical Officer of Correctional Health Partners. Defendant Mix, and Medical Doctor responsible for supervising the medical staff at the Kennebec County Correctional Facility at all times relevant to this Complaint, was employed by Correctional Health Partners which has a principal place of business located at 1125 17th Street Suite 1000, City of Denver, State of Colorado 80202; and which holds a contract with Kennebec County for the provision of medical services to inmates housed at the Kennebec County Correctional Facility.  At all times relevant to this Complaint, Defendant Mix was the medical doctor supervising all medical health services rendered to Kennebec County at the Kennebec County Correctional Facility.  Defendant Mix supervised all PHP/CHP employees who provided health services rendered to Kennebec County at the Kennebec County Correctional Facility.  Defendant Mix resides, is found, has an agent, or transacts her affairs in Kennebec County.

11. Defendant Dee Butler is a registered nurse with correctional health certification (CCHP-RN) and is employed by PHP/CHP as Director of Clinical Operations which has a principal place of business located at 1125 17th Street, Suite 1010, City of Denver, State of Colorado 80202.  At all times relative to this complaint, Defendant Butler supervised employees of PHP/CHP to ensure compliance with National Commission on Correctional Heath ("NCCHC") and American Correctional Association ("ACA") standards. Defendant Butler supervised all PHP/CHP employees who provided health services

rendered to Kennebec County at the Kennebec County Correctional Facility.  Defendant
Butler resides, is found, has an agent, or transacts her affairs in Kennebec County.

12. Defendant Teresa Mayer is a psychiatric medical doctor employed by PHP/CHP which
has a principal place of business located at 1125 17th Street, Suite 1010, City of Denver,
State of Colorado 80202 to provide supervision and control of CHP's policies,
procedures, and protocols related to mental health specific to correctional healthcare.
Defendant Mayer is responsible for providing treatment guidelines for health professional
staff and for ensuring clinically appropriate care.  Defendant Mayer supervised all
PHP/CHP employees who provided health services rendered to Kennebec County at the
Kennebec County Correctional Facility.  Defendant Mayer resides, is found, has an agent,
or transacts her affairs in Kennebec County.

13. Defendant Timothy Canham was, at all times relative to this complaint, employed by
PHP/CHP which has a principal place of business located at 1125 17th Street Suite 1000,
City of Denver, State of Colorado 80202; and which holds a contract with Kennebec
County, the Kennebec County Sheriff's Office and its Corrections Division and/or
Kennebec County Correctional Facility.  At all times relevant to this Complaint,
Defendant Canham provided medical services to Kennebec County at the  Kennebec
County Correctional Facility under the direct supervision of Defendants Archambeau,
Mix, Butler, and Mayer.  Defendant Canham resides, is found, has an agent, or transacts
his affairs in Kennebec County.

14. Defendant Kimberly Vigue was a registered nurse in the State of Maine who, at all
times relevant to this Complaint, was employed by Correctional Health Partners which
has a principal place of business located at 1125 17th Street Suite 1000, City of Denver,
State of Colorado 80202.  At all times relevant to this Complaint, Defendant Vigue
provided health services as a registered nurse to Kennebec County at the Kennebec

County Correctional Facility.  It is the Plaintiff's belief that Defendant Vigue resides at 256 Town Farm Road, Town of Oakland, County of Kennebec, State of Maine. Defendant Vigue resides, is found, has an agent, or transacts her affairs in Kennebec County

## STATEMENT OF FACTS

15. This complaint arises from the actions of PHP/CHP employee Defendant Kimberly Vigue who, at all times relative to this Complaint was under the direct supervision and control of Defendants Archambeau, Mix, Butler, Mayer, and Canham which occurred on or about October of 2015 in the medical department at Kennebec County Correctional Facility (hereinafter referred to as "KCCF").

16. Hanson was then an inmate being housed at KCCF.

17. Hanson is an adult male who suffers from a disability in that he has a psychological condition known to the Defendants.

18. Kimberly Arlene Vigue was formerly a registered nurse at the Maine Board of Nursing under registration number RN51269 (hereinafter referred to as "Vigue").  Vigue was employed by Physician Health Partners, LLC and Correctional Health Partners, LLC (hereinafter referred to as "PHP/CHP") under the supervision and control of Defendants Archambeau, Mix, Butler, Mayer, and Canham.

19. Defendant Canham was, at all times relative to this complaint, an employee of PHP/CHP under the supervision and control of Defendants Archambeau, Mix, Butler, and Mayer, and a physician's assistant who was required by the Maine Board of Licensure in Medicine to have a properly registered supervising physician.

20. From November 2015 through March 2016, Canham was a PHP/CHP employee under the supervision and control of Defendants Archambeau, Mix, Butler, and Mayer who practiced medicine at KCCF without a properly registered supervising physician.

21. Defendant Canham was under the direct supervision of Defendant Mix, who is charged by PHP/CHP to oversee and supervise the clinical delivery and management systems for correctional facilities with whom PHP/CHP holds a contract for services.

22. Vigue was under the direct supervision of Defendant Mix, who is employed by PHP/CHP to supervise the clinical delivery and management systems for correctional facilities with whom PHP/CHP holds a contract for services.

23. At all times relative to this complaint, Kennebec County contracted PHP/CHP to provide medical services to inmates which required PHP/CHP personnel to "fully comply with all Maine Department of Corrections Regulations and any other applicable state or federal law, code, rule, or regulations."

24. At all times relative to this complaint, Kennebec County contracted PHP/CHP to provide medical services to inmates which required PHP/CHP personnel to "know all laws, codes, rules and regulations that are applicable to the provision of healthcare services to inmates at the Kennebec County Correctional Facility."

25. The contract between PHP/CHP and Kennebec County was signed on behalf of PHP/CHP by Defendant Archambeau.

26. Staff at KCCF, to include PHP/CHP employees, saw nurse Vigue do things they knew were in violation of inmate rights and in violation of Kennebec County policies and procedures for the protection of inmate rights and for the safety of staff and inmates.

27. Staff at KCCF, to include PHP/CHP employees, saw nurse Vigue dispense medications to inmates without doctor's orders by increasing dosages, and dispensing medications that were not prescribed by a doctor.

8

28. Staff at KCCF, to include PHP/CHP employees, saw nurse Vigue make inappropriate gestures which were sexual in nature towards male inmates.

29. The KCCF and PHP/CHP practice and custom of allowing nurse Vigue "special privileges" directly lead to the violation of Hanson's rights and damaged him mentally, physically and emotionally.

30. October 2, 2015, Hanson complained of a boil located on his buttocks which was causing him pain.

31. Staff at KCCF escorted Hanson to the medical department for evaluation and treatment.

32. Hanson was evaluated by Canham who attempted to relieve the pressure and pain by extracting infected liquid from the boil.

33. Canham concluded that he could not treat Hanson's boil and Hanson was returned to his cell.

34. Subsequently, Defendant Vigue enlisted the assistance of Kennebec County Staff to force Hanson back to the medical department, after the doctor had left the premises.

35. There is no known doctor's order which provides for Vigue to make any attempt to treat Hanson's boil.

36. Despite not having the authority to perform any surgical procedures, Vigue did make numerous attempts to extract the boil, using a scalpel to cut into Hanson's flesh.

37. During this procedure, Hanson was not given any medication to numb the area or alleviate the pain caused by Vigue slicing into his pussed, infected flesh.

38. During the course of this torture, Defendant Vigue did make offensive sexual advances, comments, and gestures toward Hanson by pressing her breasts against his naked legs and peering at his genitals, making offensive and uncomfortable comments about the size of his penis.

39. PHP/CHP employee Vigue, under the supervision and control of Archambeau, Mix, Butler, Mayer, and Canham, was permitted to intimidate and instill fear upon inmates to force them to comply with Vigue's orders.

40. Defendants' did not obtain any medical recommendation to take whatever means in order to remove the boil on Hanson's body on the day of the incident on approximately October 2, 2015.

41. PHP/CHP employee Nurse Vigue did not have any legal or medical authority to use medical equipment and devices such as a scalpel and syringes, upon Hanson's body.

42. PHP/CHP employee Nurse Vigue, under the supervision and control of Archambeau, Mix, Butler, Mayer, and Canham, did not have Ronald Hanson's consent to provide such medical treatment on approximately October 2, 2015.

43. PHP/CHP employee nurse Vigue, , under the supervision and control of Archambeau, Mix, Butler, Mayer, and Canham, was determined to remove the boil on Hanson's body at any cost and by any means.

44. As a result of the assault and battery, abuse, and violation of civil rights upon Plaintiff by Defendants, Hanson developed a near life-threatening infection which put him at risk of death.

45. As a result of the assault and battery, abuse and violation of civil rights upon Plaintiff by Defendants, Hanson suffered permanent injury to his body.

46. Since the October 2, 2015 incident, Hanson has suffered severe emotional trauma, anxiety, depression, sleeplessness and fear of his surroundings.

47. Defendants Archambeau, Mix, Butler, Mayer, Canham, Correctional Health Partners and Physician Health Partners failed to properly train, retain and supervise its employees and

ensure its employees had the proper licenses and credentials to work as health care providers in the State of Maine.

48.  Defendants Archambeau, Mix, Butler, Mayer, Canham, Correctional Health Partners and Physician Health Partners fostered a custom and practice that allowed PHP/CHP employee Nurse Vigue and CHP Staff to violate the inmates Federal and State Civil Rights, specifically Ronald Hanson's rights.

49. Defendants Archambeau, Mix, Butler, Mayer, Canham, Correctional Health Partners and Physician Health Partners fostered a custom and practice that failed to train PHP/CHP employee Vigue and other PHP/CHP Staff on protecting inmates Federal and State Civil Rights, specifically Ronald Hanson's rights.

50. Defendants Archambeau, Mix, Butler, Mayer, Canham, Correctional Health Partners and Physician Health Partners fostered a custom and policy that failed to train PHP/CHP employee Nurse Vigue and PHP/CHP Staff in the areas of, inmates rights to refuse medication, use of force and due process which was the moving force behind the deprivation of Ronald Hanson's rights Constitutional and Civil Rights.

51. PHP/CHP Staff walked away and failed to intervene even though they knew nurse Vigue was abusing inmate rights.

52. 30-A M.R.S.A. §1561 provides that "[a]ny person incarcerated in a county jail has a right to adequate professional medical care."

53. Kennebec County has contracted with PHP/CHP for the provision of medical care as to health services pursuant to its obligation under Maine statutory law.

54. Hanson had no choice but to rely on the county jail to treat his medical and psychological needs and if the county jail failed to do so, his needs would not be met.

55. The Defendants were acting and under the color of law at all times relevant to all actions and inactions as described in paragraphs 15 through 54.

## COUNT 1

### Violations of Plaintiff's Civil Rights actionable under 42 U.S.C. § 1983 To Be Free From Excessive, Unreasonable, and Unjustified Force in Violation of the 4th and 14th Amendments

56. The above facts are restated in this Count and incorporated herein.

57. The Defendants actions and inactions as asserted in paragraphs 15 through 55 violated Hanson's Civil Rights to be from excessive, unreasonable and unjustified force in violation of the 4th and 14th amendments of the United States Constitution.   The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in the conduct as stated in paragraphs 15 through 55.

58. The Defendants, by virtue of their contract with Kennebec County, were obligated to "fully comply with all Maine Department of Corrections Regulations and any other applicable state or federal law, code, rule, or regulations" and to "know all laws, codes, rules and regulations that are applicable to the provision of healthcare services to inmates at the Kennebec County Correctional Facility."

59. The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled employee Vigue to disregard Hanson's civil rights and perpetrate a torture, assault and battery and sexual assault upon Hanson. The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 15 through 55.

60. Because of the Defendants' failure to properly train and supervise its employees, PHP/CHP employee Nurse Vigue was acting within the scope of her employment and

acting under the color of law when she violated Hanson's civil rights, state rights, and federal rights.

61. Because of the Defendants' policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, its employees were enabled to disregard Hanson's civil rights and perpetrate a torture, assault and battery and sexual assault upon Hanson. The Defendants were acting within the scope of their employment and under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 15 through 55.

62. The Defendants have violated Ronald Hanson's Civil Rights as described in this Count, causing Ronald Hanson Hanson to be injured by way of pain and suffering, physical and mental distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Hanson should be compensated. Litigation costs and attorney fees should be awarded. The Defendant employers are vicariously liable.

## COUNT 2

## Violations of Plaintiff's Civil Rights actionable under 42 U.S.C. § 1983 for Violation of the Fourth and Fourteenth Amendments for Assault and Battery and Sexual Assault on the Plaintiff

63. The above facts are restated in this Count and incorporated herein.

64. The Defendants actions and inactions as asserted in paragraphs 15 through 62 violated Ronald Hanson Civil Rights to be free from assault and battery and sexual assault in violation of the 4th and 14th amendments of the United States Constitution. The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in the conduct as stated in paragraphs 15 through 62.

65. The Defendants, by virtue of their contract with Kennebec County, were obligated to "fully comply with all Maine Department of Corrections Regulations and any other

13

applicable state or federal law, code, rule, or regulations" and to "know all laws, codes, rules and regulations that are applicable to the provision of healthcare services to inmates at the Kennebec County Correctional Facility."

66. The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled employee Vigue to disregard Ronald Hanson civil rights and perpetrate a torture, assault and battery and sexual assault upon Ronald Hanson. The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 15 through 62.

67. Because of the Defendants' failure to properly train and supervise its employees, CHP employee Nurse Vigue was acting within the scope of her employment and acting under the color of law when she forced Ronald Hanson to submit to cruel and painful extraction of puss from a large boil in his buttocks which left him at risk of death, and severely injured him.

68. Because of the Defendants' failure to properly train and supervise its employees, CHP employee Nurse Vigue was acting within the scope of her employment and acting under the color of law when she ordered Ronald Hanson to take his clothes off and forcibly subjected him to extraction of puss from a boil on his buttock using a scalpel against his will.

69. Because of the Defendants' failure to properly train and supervise its employees, CHP employee Nurse Vigue was acting within the scope of her employment and acting under the color of law when she placed Hanson in fear and used a scalpel, among other weapons, to extract puss from a boil located on his buttocks which was imbedded into his skin.

70. Because of the Defendants' policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, its employees were enabled to disregard Ronald Hanson civil rights and perpetrate a torture, assault and battery and sexual assault upon Ronald Hanson. The Defendants were acting within the scope of their employment and under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 15 through 62.

71. The Defendants have violated Ronald Hanson Civil Rights as described in this Count, causing Ronald Hanson to be injured by way of pain and suffering, physical and mental distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Hanson should be compensated. Litigation costs and attorney fees should be awarded. The Defendant employers are vicariously liable.

## COUNT 3

### Violations of Plaintiff's Civil Rights actionable under 42 U.S.C. § 1983 For Violation of the Eighth Amendment of the United States Constitution Against Cruel and Unusual Punishment

72. The above facts are restated in this Count and incorporated herein.

73. The Defendants actions and inactions as asserted in the above facts as stated in paragraphs 15 through 71 violated Ronald Hanson Civil Rights to be free from cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in the conduct as stated in paragraphs 15 through 71.

74. The Defendants, by virtue of their contract with Kennebec County, were obligated to "fully comply with all Maine Department of Corrections Regulations and any other

applicable state or federal law, code, rule, or regulations" and to "know all laws, codes, rules and regulations that are applicable to the provision of healthcare services to inmates at the Kennebec County Correctional Facility."

75. The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled employee Vigue to disregard Ronald Hanson civil rights and perpetrate a torture, assault and battery and sexual assault upon Ronald Hanson. The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 15 through 71.

76. Because of the Defendants' failure to properly train and supervise its employees, CHP employee Nurse Vigue was acting within the scope of her employment and acting under the color of law when she forced Hanson to submit to extraction of puss from a boil located on his buttocks which left him at risk of death from infection and severely injured him.  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 15 through 71.

77. Because of the Defendants' failure to properly train and supervise its employees, CHP employee Nurse Vigue was acting within the scope of her employment and acting under the color of law when she forced Ronald Hanson to submit to cruel and painful extraction of puss from a large boil in his buttocks which left him at risk of death, and severely injured him.

78. Because of the Defendants' failure to properly train and supervise its employees, CHP employee Nurse Vigue was acting within the scope of her employment and acting under the color of law when she ordered Ronald Hanson to take his clothes off and forcibly

subjected him to extraction of puss from a boil on his buttock using a scalpel against his will.

79. Because of the Defendants' failure to properly train and supervise its employees, CHP employee Nurse Vigue was acting within the scope of her employment and acting under the color of law when she placed Hanson in fear and used a scalpel, among other weapons, to extract puss from a boil located on his buttocks which was imbedded into his skin.

80. The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled employees to disregard Ronald Hanson civil rights and perpetrate a torture, assault and battery and sexual assault upon Ronald Hanson.  The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 15 through 71.

81. The Defendants have violated Ronald Hanson Civil Rights as described in this Count, causing Ronald Hanson to be injured by way of pain and suffering, physical and mental distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Hanson should be compensated. Litigation costs and attorney fees should be awarded.  The Defendant employers are vicariously liable.

### COUNT 4

### Violations of Plaintiff's Civil Rights actionable under 42 U.S.C. § 1983 For Violations of the Plaintiff's Fourteenth Amendment Right to Due Process and the Right to Adequate Medical Treatment

82. The above facts are restated in this Count and incorporated herein.

83. The Defendants actions and inactions as asserted in the above facts as stated in paragraphs 15 through 81 violated Ronald Hanson Civil Rights, depriving him of his

right to adequate medical treatment, right to be free from abuse, right to Due Process in violation of the Fourteenth Amendment of the United States Constitution.    The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in the conduct as stated in paragraphs 15 through 86.

84. The Defendants, by virtue of their contract with Kennebec County, were obligated to "fully comply with all Maine Department of Corrections Regulations and any other applicable state or federal law, code, rule, or regulations" and to "know all laws, codes, rules and regulations that are applicable to the provision of healthcare services to inmates at the Kennebec County Correctional Facility."

85. The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled employee Vigue to disregard Ronald Hanson civil rights and perpetrate a torture, assault and battery and sexual assault upon Ronald Hanson. The Defendants were acting within the scope of their employment and acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 15 through 81.

86. Because of the Defendants' failure to properly train and supervise its employees, CHP employee Nurse Vigue was acting within the scope of her employment and acting under the color of law when she forced Ronald Hanson to submit to cruel and painful extraction of puss from a large boil in his buttocks which left him at risk of death, and severely injured him.

87. Because of the Defendants' failure to properly train and supervise its employees, CHP employee Nurse Vigue was acting within the scope of her employment and acting under the color of law when she ordered Ronald Hanson to take his clothes off and forcibly subjected him to extraction of puss from a boil on his buttock using a scalpel against his will.

88. Because of the Defendants' failure to properly train and supervise its employees, CHP employee Nurse Vigue was acting within the scope of her employment and acting under the color of law when she placed Hanson in fear and used a scalpel, among other weapons, to extract puss from a boil located on his buttocks which was imbedded into his skin.

89. The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled employees to disregard Ronald Hanson civil rights and perpetrate a torture, assault and battery and sexual assault upon Ronald Hanson.  The Defendants were acting within the scope of their employment and were acting under the color of law when they engaged in this conduct and the conduct as stated in paragraphs 15 through 81.

90. The Defendants have violated Ronald Hanson Civil Rights as described in this Count, causing Ronald Hanson to be injured by way of pain and suffering, physical and mental distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Hanson should be compensated. Litigation costs and attorney fees should be awarded.  The Defendant employers are vicariously liable.

## **COUNT 5**

### **Violation of Plaintiff's Civil Rights Under the Maine Human Rights Act, Chapter 337, §§4551-4634; Chapter 337A:  Protection from Harassment §4651-4661; and Chapter 337B: Civil Rights Act, § 4681- 4685**

91. The above facts are restated in this Count and incorporated herein.

92. The Defendants actions and inactions as asserted in the above facts as stated in paragraphs 15 through 90 violated Ronald Hanson Civil Rights, depriving him of his right to be free from harassment, physical and mental abuse and torture, which is a violation of Plaintiff's Civil Rights under the Maine Human Rights Act, Chapter 337, §§

19

4551-4634; Protection from Harassment §4651-4661; and Chapter 337B, Civil Rights Act, § 4681- 4685.  The Defendants were acting under the color of law.

93. Because of the Defendants' failure to properly train and supervise its employees, CHP employee Nurse Vigue was acting within the scope of her employment and acting under the color of law when she forced Ronald Hanson to submit to cruel and painful extraction of puss from a large boil in his buttocks which left him at risk of death, and severely injured him.

94. Because of the Defendants' failure to properly train and supervise its employees, CHP employee Nurse Vigue was acting within the scope of her employment and acting under the color of law when she ordered Ronald Hanson to take his clothes off and forcibly subjected him to extraction of puss from a boil on his buttock using a scalpel against his will.

95. Because of the Defendants' failure to properly train and supervise its employees, CHP employee Nurse Vigue was acting within the scope of her employment and acting under the color of law when she placed Hanson in fear and used a scalpel, among other weapons, to extract puss from a boil located on his buttocks which was imbedded into his skin.

96. The Defendants had a policy, custom and practice in place that failed to train its employees properly to ensure that inmates civil rights were not violated, which enabled employees to disregard Ronald Hanson civil rights and perpetrate a torture, assault and battery and sexual assault upon Ronald Hanson.

97. The Defendants have violated Ronald Hanson Civil Rights as described in this Count, causing Ronald Hanson to be injured by way of pain and suffering, physical and mental distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Hanson should be compensated.

Litigation costs and attorney fees should be awarded.  The Defendant employers are vicariously liable.

## COUNT 6

### Violation of Plaintiff's Right to be Free from Discrimination Under Title II of the Americans With Disability Act Under 42 U.S.C. §12132. et sec.

98. The above facts are restated in this Count and incorporated herein.

99. The Defendants, by virtue of their contract with Kennebec County, were obligated to "fully comply with all Maine Department of Corrections Regulations and any other applicable state or federal law, code, rule, or regulations" and to "know all laws, codes, rules and regulations that are applicable to the provision of healthcare services to inmates at the Kennebec County Correctional Facility."

100. 30-A M.R.S.A. §1561 provides that "[a]ny person incarcerated in a county jail has a right to adequate professional medical care."

101. Kennebec County has contracted with CHP for the provision of medical care as to health services pursuant to its obligation under Maine statutory law.

102. Hanson had no choice but to rely on the county jail to treat her medical and psychological needs and if the county jail failed to do so, her needs would not be met.

103. To ensure that inmate health needs would be met, Kennebec County engaged in a contract with CHP for the provision of those services.

104. The Defendants were acting and under the color of law at all times relevant to all actions and inactions as described in this complaint.

105. Title II of the American With Disabilities Act (hereinafter "ADA") (42 USC §12132 et seq.) prohibits State and local entities, including the Defendants, from discriminating against individuals with disabilities in the provision of programs, services, or activities.

106.     Title II of the ADA (42 USC §12132 et seq.) requires that the Defendants must make reasonable accommodations to its programs, services, and/or activities for individuals with disabilities to ensure that individuals with disabilities can equally effectively participate in the programs, services or activities.

107.     The Defendants knew or believed that Ronald Hanson had mental health issues and/or was otherwise disabled within the meaning of the ADA at all times relevant to this complaint.

108.     Upon information and belief, Defendant Vigue targeted Hanson for abuse because he has mental health issues.

109.     The Defendants violated Hanson's right to be free from discrimination by perpetrating cruel, torturous, heinous act of mutilation upon Hanson because he has mental health issues.

110.     The Defendants failed to consider Ronald Hanson's disability when PHP/CHP employee Nurse Vigue mutilated Hanson with a scalpel, causing him excruciating pain and suffering.

111.     The Defendants failed to make reasonable accommodations for Ronald Hanson to allow him to effectively participate in programs, activities, or services as an inmate at the KCCF, by failing to conduct an adequate needs assessment of his psychological condition known to the Defendants when Ronald Hanson presented with a boil upon his buttocks which began causing him pain, failing to provide adequate medical care to Hanson when Canham could not express the puss from the boil, failing to provide adequate medical care when Vigue decided to force Hanson back into medical and made numerous attempts to extract the infected liquid using a scalpel and no numbing agent, failing to provide Hanson with the necessary antibiotics prescribed by the treating hospital after

surgery, and failing to conduct ongoing needs assessment to ensure that the Ronald Hanson' disability related needs are being met.

112.     The Defendants violated Ronald Hanson' rights under the ADA.

113.     As a direct and proximate result of the Defendants violation of Ronald Hanson's rights under the ADA, the Defendants have caused Ronald Hanson to be injured by way of pain and suffering, physical and mental distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Hanson should be compensated.  Litigation costs and attorney fees should be awarded.  The Defendant employers are vicariously liable.

## **COUNT 7**

### **Common Law Negligence**

114.     The above facts are restated in this Count and incorporated herein.

115.     The Defendants, by virtue of their contract with Kennebec County, were obligated to "fully comply with all Maine Department of Corrections Regulations and any other applicable state or federal law, code, rule, or regulations" and to "know all laws, codes, rules and regulations that are applicable to the provision of healthcare services to inmates at the Kennebec County Correctional Facility."

116.     The Defendants owed a duty to Ronald Hanson to properly train their employees so that as an inmate, he would not be assaulted, he would receive adequate medical care, he would not be tortured and mutilated, and he would not be denied antibiotics and wound-care treatment.

117.     The Defendants owed a duty to Ronald Hanson as an inmate at KCCF to properly train and supervise CHP Staff.  Defendant's breach of their duty harmed Ronald Hanson and Defendant's breach of their duty owed to Ronald Hanson is the proximate cause of Ronald Hanson' injuries as described above.

118.     The Defendants had a special relationship with Ronald Hanson and Defendants owed a duty to Ronald Hanson to intervene and protect Ronald Hanson from being tortured and mutilated against his will.   Ronald Hanson was harmed physically and emotionally due to Defendant's breach of duty.   Defendant's breach of duty is the proximate cause of Ronald Hanson' injuries as described above.

119.     The Defendants negligence as described in paragraphs 15 through 113 and in this Count, caused Ronald Hanson to be injured by way of pain and suffering, physical and emotional distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Hanson should be compensated.   Litigation costs and attorney fees should be awarded.   The Defendant employers are vicariously liable.

## **COUNT 8**

## **Common Law Assault and Battery**

120.     The above facts are restated in this Count and incorporated herein.

121.     PHP/CHP employee Nurse Vigue committed multiple assaults and batteries upon Ronald Hanson as stated in paragraphs 15 through 119.

122.     PHP/CHP employee Nurse Vigue, as stated above, made multiple attempts to express infected liquid from Hanson's boil upon his buttocks, using a scalpel and no numbing agent.

123.     The Defendants assaults and batteries perpetrated upon Ronald Hanson as described in paragraphs 15 through 119 and in this Count, caused Ronald Hanson to be injured by way of pain and suffering, physical and emotional distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Hanson should be compensated.  Litigation costs and attorney fees should be awarded. The employer Defendants are vicariously liable.

## COUNT 9

### Negligent Supervision, Retention and Training
### Correctional Health Partners  -   Physician Health Partners

124.     The above facts are restated in this Count and incorporated herein.

125.     Defendants negligently trained, retained, and supervised Defendant nurse Vigue and other PHP/CHP employees.  The acts and conduct of Defendant nurse Kimberly Vigue were the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the United States and Constitution of the State of Maine.

126.     The Defendant's negligent supervision, retention and training as described in paragraphs 15 through 123 and in this Count, caused Ronald Hanson to be injured by way of pain and suffering, physical and emotional distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Hanson should be compensated.  Litigation costs and attorney fees should be awarded. The employer Defendants are vicariously liable.

## COUNT 10

### Intentional Infliction of Emotional Distress

127.     The above facts are restated in this Count and incorporated herein.

128.     The Defendants, by virtue of their contract with Kennebec County, were obligated to "fully comply with all Maine Department of Corrections Regulations and any other applicable state or federal law, code, rule, or regulations" and to "know all laws, codes, rules and regulations that are applicable to the provision of healthcare services to inmates at the Kennebec County Correctional Facility."

129.     The Defendants owed a duty to Ronald Hanson to properly train their employees so that as an inmate, he would not be assaulted, he would receive adequate medical care,

he would not be tortured and mutilated, and he would not be denied antibiotics and wound-care treatment.

130.     Defendants conduct, in failing to properly train and supervise their employees, resulted in the assault and battery of Plaintiff, by way of torture and mutilation.

131.     Defendants conduct, in failing to properly train and supervise their employees, resulted in the assault and battery of Plaintiff, by way of restraining and forcibly mutilating his body with a scalpel was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency, and caused severe emotion distress to Plaintiff.

132.     The conduct of Defendants as described in paragraphs 15 through 126 and in this Count was the direct and proximate cause of injury and damage to Plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the United States and her statutory and common law rights as guaranteed by the laws and Constitution of the State of Maine.

133.     The Defendants conduct as described above caused Ronald Hanson to be injured by way of pain and suffering, physical and emotional distress, headaches, nightmares, stomach aches, loss of sleep, anxiety, humiliation, suicidal thoughts and economical loss, for which Hanson should be compensated.  Litigation costs and attorney fees should be awarded.  The employer Defendants are vicariously liable.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands the following relief jointly and severally against all of the Defendants:

(1)  Compensatory damages in the amount to be determined by a jury;

(2)  Exemplary and Punitive damages in the amount to be determined by a jury;

(3)  The convening and empaneling of a jury to consider the merits of the claims herein;

(4)  Costs and interest and attorney's fees;

(5)  Past, present and future medical expenses;

(6)  Past, present and future pain and suffering damages;

(7)  Past, present and future emotional distress damages;

(8) GRANT any other such relief this Honorable Court deems equitable and just

Respectfully submitted,

Ronald Hanson
Plaintiff,

By his Attorney,

Dated:  August 27, 2019

/s/ Jackie T. DiGiacomo, Esq.

Jackie T. DiGiacomo, Esq.
Maine Bar Number 004620
Attorney
PO Box 1837
Waterville, ME 04903
(207) 361-4700
Jackie.t.digiacomo@gmail.com